IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM JEWELL, | ) | CASE NO. 1:06 CV 1391 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, William Jewell, for disability insurance benefits.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Jewell had severe impairments consisting of low back pain, pain in the neck, right arm pain, numbness of the left foot (toes), and depression.[1] The ALJ made the following finding regarding Jewell's residual functional capacity:

> Accordingly, the undersigned finds that the claimant has the residual functional capacity to perform light unskilled work with a sit/stand option. The claimant is further precluded from crawling, crouching, climbing, squatting, or kneeling. Claimant is unable to use his lower extremities for pushing or pulling or use his upper extremities for work above shoulder level.[2]

---

[1] Transcript ("Tr.") at 27.

[2] *Id.* at 25.

The ALJ decided that the above-quoted residual functional capacity rendered Jewell unable to perform his past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Jewell could perform.[4] The ALJ, therefore, found Jewell not under a disability.[5]

Jewell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, he asserts two issues for decision:

- Whether the Commissioner accorded appropriate weight to the report of the treating physician?

- Whether the Commissioner's determination as to the claimant's residual functional capacity is supported by substantial evidence.

I conclude that the ALJ did not properly analyze and articulate with respect to the opinion of Jewell's treating physician and that the residual functional capacity finding does not have the support of substantial evidence. I, therefore, recommend that the Court reverse the decision of the Commissioner denying the application for disability insurance benefits and remand the case for further proceedings.

---

[3] *Id.* at 27.

[4] *Id.*

[5] *Id.*

**Relevant Medical Evidence**

This case turns on the assessments of functional limitations provided by various medical sources, which appear in the transcript, and the ALJ's treatment of those sources. I will, therefore, discuss these assessments in some detail.

Jewell claims an onset date of January 22, 2003.[6]

On June 6, 2003, Augusto L. Pangalangan, M.D., a state agency reviewing physician, completed a residual functional capacity assessment based on a records review.[7] It appears that Dr. Pangalangan performed his review based upon medical records from Bharat C. Shah, M.D.;[8] medical records from John Collis, Jr., M.D.;[9] and certain medical records from Lutheran Medical Center,[10] as evidenced by a list of available medical records set out in the letter notice of the denial of the disability benefits claim dated June 13, 2003.[11]

Dr. Shah, a pain management specialist, had treated Jewell for back pain and lower right arm pain.[12] Dr. Collis, a neurosurgeon, also treated Jewell for low back pain.[13] The

---

[6] *Id.* at 66.

[7] *Id.* at 222-26.

[8] *Id.* at 162-99.

[9] *Id.* at 141-45.

[10] *Id.* at 139-40, 146-54.

[11] *Id.* at 35.

[12] *Id.* at 187.

[13] *Id.* at 145.

Lutheran Medical Center's records related to L-4 and L-5 discectomies and interbody fusions done in October of 2001.[14]

Dr. Pangalangan opined that Jewell could lift 20 pounds occasionally and 10 pounds frequently; stand or walk six hours in an eight-hour day; and push or pull without limitation other than that for lifting.[15] He also limited Jewell to occasional balancing.[16] Dr. Pangalangan stated that although Jewell's symptoms were attributable to a medically determined impairment, his statements regarding the severity of those symptoms and his functionality were only partially credible.[17] He affirmatively stated that there were no treating or examining source statements in the file that he reviewed.[18]

John Stratton, Ph.D., a psychologist, did a consultative examination of Jewell on September 5, 2003.[19] Dr. Stratton diagnosed Jewell as having alcohol dependence and major depressive disorder.[20] He opined that Jewell's mental abilities were moderately impaired in the following four areas: (1) the ability to relate to others, including fellow workers and supervisors; (2) the ability to understand, remember, and follow instructions; (3) the ability to maintain attention, concentration, persistence and pace, to perform single repetitive tasks;

---

[14] *Id.* at 151-52.

[15] *Id.* at 223.

[16] *Id.* at 224.

[17] *Id.* at 226.

[18] *Id.*

[19] *Id.* at 200-05.

[20] *Id.* at 203.

-4-

and (4) the ability to withstand the stress and pressures associated with day-to-day work activity.[21]

Thereafter, on September 16, 2003, Karen Terry, Ph.D., a state agency reviewing psychologist, completed a residual functional capacity assessment.[22] Dr. Terry substantially agreed with the opinion of Dr. Stratton, finding Jewell moderately limited in 13 categories.[23] In her narrative, Dr. Terry concluded that Jewell "retains a capacity to complete routine tasks that do not involve public interaction."[24]

Richard M. Cole, D.O., Jewell's treating primary care physician, completed a residual functional capacity assessment on June 22, 2005.[25] In that assessment, Dr. Cole opined that Jewell could lift and carry five pounds occasionally and no pounds frequently; he could stand or walk two hours in an eight-hour workday and one-half hour without interruption; he could sit two hours in an eight-hour workday and one hour without interruption; and he could never climb, balance, crouch, kneel, or crawl.[26]

---

[21] *Id.* at 204.

[22] *Id.* at 219-21.

[23] *Id.* at 219-20.

[24] *Id.* at 221.

[25] *Id.* at 290-92.

[26] *Id.* at 290-91.

In his decision, the ALJ discussed Dr. Cole's assessment but did not state what weight, if any, he assigned it.[27] He observed that Dr. Cole had relied quite heavily on Jewell's subjective complaints, which the ALJ found unreliable.[28]

The ALJ also discussed the opinions of Drs. Terry and Pangalangan.[29] With respect to those opinions, he observed:

> Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).[30]

The ALJ discussed Dr. Stratton's mental assessment without any reference of the weight accorded to it.[31]

## Analysis

**A.    Applicable law**

*1.    Standard of review*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[27] *Id.* at 24.

[28] *Id.*

[29] *Id.* at 24.

[30] *Id.* at 25.

[31] *Id.* at 23.

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[32]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Weight to be afforded to the opinion of a treating source*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[33]

---

[32] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[33] 20 C.F.R. § 404.1527(d)(2).

-7-

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[34]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[35] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[36]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[37] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[38] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[39] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[40]

---

[34] *Id.*

[35] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[36] *Id.*

[37] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[38] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[39] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[40] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[41] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[42] The court noted that the regulation expressly contains a "good reasons" requirement.[43] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[44]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[45] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[46] The former confers a substantial, procedural right on

---

[41] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[42] *Id.* at 544.

[43] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[44] *Id.* at 546.

[45] *Id.*

[46] *Id.*

-9-

the party invoking it that cannot be set aside for harmless error.[47] It concluded that the requirement in 20 C.F.R. § 404.1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[48]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[49] Second, the ALJ must identify for the record evidence supporting that finding."[50] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[51]

An ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then

---

[47] *Id.*

[48] *Id.*

[49] *Wilson*, 378 F.3d at 546.

[50] *Id.*

[51] *Id.*

discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in 20 C.F.R. §§ 404.1527(d)(1)-(6).

### 3. *Translating impairments into work-related capabilities on limitations*

Ultimately, at step four of the sequential evaluation process, the ALJ must determine how the claimant's severe impairments translate into work-related capabilities or limitations.[52] This is the residual functional capacity finding against which the claimant's ability to perform his or her past relevant work, or other job existing in significant numbers locally or nationally, is gauged.[53]

Critical to this residual functional capacity finding are residual capacity assessments done by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the claimant's medical records.[54] In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.[55] The District Judge in *Rohrberg v. Apfel*[56] appropriately explained the limitations on the ALJ's ability to interpret

---

[52] *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2005) (*en banc*).

[53] *Id.*

[54] 20 C.F.R. §§ 404.1513 and 404.1545(a)(3).

[55] *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

[56] *Rohrberg v. Apfel*, 26 F. Supp. 2d 303 (D. Mass. 1998).

-11-

medical data and the importance of medical opinions regarding capabilities and limitations to the residual functional capacity finding:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."
>
> In this case, the ALJ determined Rohrberg's RFC on a disbelief of the bare medical findings in her doctors' reports as well as Rohrberg's testimony. The ALJ failed to refer to – and this Court has not found – a proper, medically determined RFC in the record. Consequently, the Court concludes that there was not substantial evidence to support the ALJ's RFC determination.[57]

To be sure "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physicians's assessment."[58] But, as Judge Richard Posner of the Seventh Circuit warned in *Schmidt v. Sullivan*,[59] "[t]he medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomenon are often wrong."[60] When a claimant has sufficiently placed his or her functional inability at issue, "the ALJ must

---

[57] *Id.* at 311 (citations omitted).

[58] *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996).

[59] *Schmidt v. Sullivan*, 914 F.2d 117 (7th Cir. 1990).

[60] *Id.* at 118.

measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential...."[61]

**B.     The ALJ failed to properly articulate with respect to Dr. Cole's opinion.**

The ALJ's treatment of Dr. Cole's functional capacity assessment falls short of the articulation requirements set out in *Wilson* in several respects.  First, he did not state what weight was being given to Dr. Cole's opinion, controlling or otherwise.[62]  Second, assuming arguendo that the decision can be read as giving Dr. Cole's opinion little or no weight, he did not explain that decision in the terms of the applicable regulation.[63]  He merely observed that Dr. Cole's opinion "apparently relied heavily" on subjective complaints, and "as explained elsewhere in the opinion" good reasons exist for questioning the reliability of such complaints.[64]  But, as further discussed below, his analysis of Jewell's credibility in terms of the factors set out in the regulation is so minimal as to be nonexistent.  *Wilson* requires a remand for proper articulation.[65]

**C.     The residual functional capacity finding lacks substantial evidence for want of an adequate functional capacity assessment from a medical source.**

Assuming that Dr. Cole's opinion should be totally disregarded, the only remaining physical functional capacity assessment in the transcript is that of Dr. Pangalangan, the state

---

[61] *Manso-Pizarro*, 76 F.3d at 17.

[62] *Wilson*, 378 F.3d at 546.

[63] *Id.*

[64] Tr. at 25.

[65] *Wilson*, 378 F.3d at 546.

agency reviewing physician's decision. This assessment was done early in the case, in 2003, and the transcript contains two years of medical records that Dr. Pangalangan did not review. As the ALJ did not call a medical expert, this left him with two years of raw medical data to review and translate into work-related limitations/capabilities without the assistance of a medical source. This he could not properly do.[66]

If, on remand, the ALJ decides that Dr. Cole's assessment deserves no significant weight (after proper analysis and articulation), then his residual functional capacity finding should be made with the assistance of a medical expert.

**D.      Other matters for remand**

*1.      Credibility findings and articulation*

The Social Security Administration has recognized by policy interpretation ruling and regulation that, even in the absence of such objective medical evidence, a claimant may experience pain severe enough to impose limitations on the capacity for work.[67] In such cases, the ALJ must evaluate the credibility of the claimant's allegations of pain and pain-induced limitations.[68]

---

[66] *Nguyen*, 172 F.3d at 35; *Manso-Pizarro*, 76 F.3d at 17; *Rohrberg*, 26 F. Supp. 2d at 311.

[67] *Swain*, 297 F. Supp. 2d at 989, quoting Soc. Sec. Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996), and 20 C.F.R. § 416.929(c)(2).

[68] *Id.*

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[69] A court may not disturb the ALJ's credibility determination absent compelling reason.[70]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[71] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[72]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

---

[69] *Buxton*, 246 F.3d at 773.

[70] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[71] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[72] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

-15-

The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[73] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[74]

The strong statement from the administrative ruling quoted above constitutes a clear directive to pay as much attention to giving reasons for discounting claimant credibility as must be given to reasons for not fully accepting the opinions of treating sources. An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[75] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant

---

[73] *Felisky*, 35 F.3d at 1036; *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

[74] SSR 96-7p, 61 Fed. Reg. at 34484.

[75] 20 C.F.R. § 404.1529(c)(3).

-16-

evidence.[76] The articulation should not be conclusory;[77] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[78]

On remand the ALJ should analyze Jewell's credibility in light of the factors set forth in the regulation and provide a unified statement of the reasoning supporting the credibility finding. Although the current decision discusses the regulations and the factors therein, it does not analyze Jewell's credibility in light of those factors. In a single sentence the ALJ observes that although Jewell has received various forms of treatment (unspecified), those treatments have been generally successful.[79] At another point, he states that there exist good reasons to question Jewell's credibility for reasons explained elsewhere.[80] These references are inadequate to permit the court to trace the path of the ALJ's reasoning.[81]

*2.   Mental, non-exertional limitations*

As stated above, Jewell underwent a psychological examination by a consulting psychologist, Dr. Stratton.[82] As a result of that examination, Dr. Stratton opined that Jewell was psychologically impaired to a moderate degree in four significant respects.[83] The state

---

[76] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[77] SSR 96-7p, 61 Fed. Reg. at 34384.

[78] *Blom*, 363 F. Supp. 2d at 1054.

[79] Tr. at 24.

[80] *Id.*

[81] *Blom*, 363 F. Supp. 2d at 1054.

[82] Tr. at 200-05.

[83] *Id.* at 205.

agency psychologist, Dr. Terry, substantially agreed with the opinion of Dr. Stratton, finding Jewell moderately limited in 13 categories.[84]

Despite these impairments, the ALJ included in the residual functional capacity finding no mental, nonexertional limitations other than to unskilled work.[85]

The applicable regulation defines unskilled work as follows:

Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.[86]

In my experience, when confronted with mental impairments such as those identified by Drs. Stratton and Terry, ALJs will customarily include limitations such as limited to simple, repetitive tasks; no production quotas; and limited interaction with coworkers and supervisors. Although the definition of unskilled work on its face may encompass some aspect of these limitations, I am not convinced that the definition covers all such limitations.

My conclusion finds support in the decision of the United States District Court for the Eastern District of Michigan in *Bohn-Morton v. Commissioner of Social Security*.[87] In that case, the ALJ, as the ALJ here, posed a hypothetical question to the vocational expert

---

[84] *Id.* at 219-20.

[85] *Id.* at 25.

[86] 20 C.F.R. § 404.1568(a).

[87] *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804 (E.D. Mich. 2005).

including only exertional limitations and a limitation to unskilled work.[88] The record contained, and the ALJ had made findings as to, nonexertional limitations. In the first round of judicial review, "[t]he Court held that this was error, reasoning that the ALJ's generalized limitation to unskilled work did not adequately incorporate the specific non-exertional limitations that necessarily must have existed...."[89] The court, therefore, remanded the case so that the ALJ could place before the vocational expert a hypothetical that properly encompassed all of the claimant's limitations.[90]

On remand, the ALJ posed a hypothetical to the vocational expert that included a limitation to "simple and rote job tasks" to address the impairment as to the claimant's concentration and problems related to timely completion of tasks.[91] The court concluded that this adjustment properly identified the claimant's specific limitations and resulted in a decision supported by substantial evidence.[92]

Likewise, in this case, the ALJ on remand should translate the impairments as described in Dr. Stratton's and Dr. Terry's evaluations into specific work-related limitations and incorporate those limitations into the hypothetical posed to the vocational expert.

---

[88] *Id.* at 805.

[89] *Id.*

[90] *Id.*

[91] *Id.* at 805-06.

[92] *Id.* at 807.

**Conclusion**

Based on the foregoing, I recommend that the Court reverse the decision of the Commissioner denying Jewell's application for disability insurance benefits and remand the decision for proper articulation as to the weight given to Dr. Cole's opinion and Jewell's credibility and reconsideration of the residual functional capacity finding with the assistance of a medical expert.

Dated: March 12, 2008            s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[93]

---

[93] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).